**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**WINFRED MILAM**                                                                                          **PLAINTIFF**

v.                                              4:06CV00012-WRW

**JO ANNE B. BARNHART, COMMISSIONER**
**OF SOCIAL SECURITY ADMINISTRATION[1]**                                            **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Winfred Milam, brings this action under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, for judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance (SSD) benefits under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 416(I), 423, 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

**I. Procedural Background**

Plaintiff filed applications for SSD and SSI benefits on September 18, 2000.[2] Plaintiff alleged that he became disabled on July 19, 2000, and was unable to work because of neck pain and blurriness in his good eye.[3] His claims were denied initially and upon reconsideration.[4] At Plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) and an unfavorable

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2] Tr. 332, 741-745. Plaintiff filed previously for disability benefits. He filed applications for SSD and SSI benefits on August 13, 1997, which were denied at the initial level on January 7, 1998, with no further appeal (Tr. 14).

[3] Tr. 335, 339.

[4] Tr. 311-312, 316-317, 747-748, 739-740.

decision was issued on April 24, 2003.[5]  On July 20, 2003, the Appeals Council vacated the ALJ's decision and remanded the proceedings for additional evidence.[6]  A second hearing was conducted by another ALJ on May 18, 2004, where Plaintiff, Plaintiff's friend, and a vocational expert (VE) testified.[7]  On June 30, 2004, the ALJ issued a decision denying Plaintiff's claim for benefits.[8]  After receiving additional evidence,[9] the Appeals Council, on November 4, 2005, denied Plaintiff's request for review, making it the final decision of the Commissioner.[10]  It is from this decision that Plaintiff seeks judicial review.

## II.  Hearing Testimony

Plaintiff was 46 years old at the time of the hearing.[11]  He attended the tenth grade and graduated from the vo-tech in Harrison in auto body mechanic work.[12]  Plaintiff has past relevant work (PRW) experience as an auto body repairman, a balance regulator operator for the railroad, a floor and derrick hand in an oilfield, an order selector running a pallet jack at a grocery warehouse, and a night stocker at a grocery.[13]

At the hearing, Plaintiff testified that he can only stand or sit for 10 or 15 minutes, has constant pain in his lower back, pain up his neck from his chest, a numb left arm, and he has

---

[5]Tr. 294-302.

[6]Tr. 283-285.

[7]Tr. 1415-1436.

[8]Tr. 11-21.

[9]Tr. 8.

[10]Tr. 5-7.

[11]Tr. 1418.

[12]Tr. 1418-1419.

[13]Tr. 1419-1421.

sleeping problems.[14] He goes through a bottle of Tylenol PM a month for pain relief.[15] Plaintiff further testified that the fingers on both hands "lock up" and his back hurts when he bends over and straightens up.[16] He has had several heart attacks and several stents.[17] Plaintiff also stated that his reduced vision affects his equilibrium and that things get blurry.[18] He testified that daily visits to the chiropractor for a year had not helped, and vocational rehab had not been able to place or retrain him.[19]

Diana Quick, who lives with Plaintiff, testified that she had known him for thirteen years and he used to be a good worker.[20] She stated that she had observed Plaintiff trying to get circulation to his arm, confirmed his experiencing pain, and noted his inability to do household chores.[21]

The ALJ asked Richard Marron, the VE, a hypothetical of a male in his mid-40s with a tenth grades of education and past work experience of that in the record. The hypothetical suggested that the man could handle weights at the sedentary level; sit at least two hours out of an eight-hour day; could stand or walk at least six hours out of an eight-hour day; occasionally climb, balance, stoop, crouch, kneel or crawl. He also should avoid moderate exposure to heights, moving machinery, humidity, dust, temperature and vibrations, and would have to work in a job that would allow a sit-

---

[14]Tr. 1421-1422, 1423, 1428, 1430.

[15]Tr. 1422.

[16]Tr. 1423-1424.

[17]Tr. 1425.

[18]Id.

[19]Tr. 1429.

[20]Tr. 1431.

[21]Tr. 1432.

stand option; and is not sighted in his left eye.[22] The VE responded that the individual could not perform Plaintiff's past work.[23] When asked if there were any other jobs that individual could perform, the VE responded that if the sit-stand option was eliminated, the individual could be an order clerk for food and beverages, a telephone quotation clerk, or a callout operator.[24] He described the jobs as usually involving sitting for up to six hours with walking/standing for two hours, and the individual could be seated for 30 minutes and then able to stand for a minute or two and perform those jobs.[25]

Plaintiff's attorney posed a hypothetical of an individual with the residual functional capacity (RFC) of sedentary with no depth perception, who would need a sit-stand option, and who would have pain and fatigue frequently and severe enough to markedly interfere with sustaining competitive employment on a regular basis. The VE testified that there were no jobs that could be performed by such an individual.[26]

## III. Summary of Evidence in Record

Plaintiff suffered an injury to his left eye when he fell off a porch as a child and, at a March 18, 2004 examination at UAMS, he had visual acuity of 20/25 in the right eye and 20/400 in the left eye, which is sensitive to light.[27]

Dr. David Mego at the Little Rock Cardiology Clinic, in a February 6, 2002 report, summarized that Plaintiff had five to six coronary angioplasties over the past four or five years, with

---

[22]Tr. 1433-1434.

[23]Tr. 1434.

[24]Id.

[25]Tr. 1435.

[26]Id.

[27]Tr. 668-670,1433.

the most recent being in December, 2000. He testified that Plaintiff complained of predictable angina when walking briskly, picking up heavy objects, mowing the lawn, or walking up a flight of stairs.[28] Plaintiff was taking metorolal, isordil, sublingual nitroglycerin, and aspirin daily.[29] Plaintiff's examination revealed stable vital signs, a right carotid bruit was noted, and no murmurs noted. A long-term prognosis could not be determined without a treadmill stress test or echocardiography.[30]

Dr. Harold Chakales performed a consultative examination of Plaintiff on December 3, 2003, and it was noted that Plaintiff had progressive mild degenerative changes in his cervical spine; a "satisfactory" range of motion in the neck, shoulder, elbows, and hands; a distinct limitation of range of movement in the lumbosacral spine; some muscle spasm; and negative bilateral straight leg raising.[31] Dr. Chakales rated that Plaintiff could lift up to 20 pounds occasionally; could sit four hours in an eight-hour workday; could stand and/or walk seven hours in an eight-hour workday; could occasionally push and pull with his hands and feet; could occasionally climb, balance, stoop, crouch, kneel, and crawl; and should have only moderate exposure to heights, moving machinery, humidity, temperature extremes, and vibrations.[32]

An assessment at Arkansas Rehabilitation Services described Plaintiff's disability as herniated disc, blindness in left eye, and cardiac problems, and it was noted that he had limitations in walking, standing, stooping, bending, reaching, and pushing and pulling.[33]

---

[28]Tr. 91.

[29]Id.

[30]Tr. 92.

[31]Tr. 344-345

[32]Tr. 347.

[33]Tr. 275.

May 25, 2004 records from UAMS reflect that Plaintiff had some exertional chest pain and no problems with his medicines.[34]  He complained of shortness of breath, but denied malaise and fatigue.[35]

A June 4, 2004 MRI of Plaintiff's cervical spine found some moderate right broad-based disc herniation centrally at the C6-7 level and a small to moderate central to right-sided disc herniation at the C5-6 level.[36]

On July 23, 2004, Plaintiff underwent a coronary artery bypass grafts and mitral valve repair at University Hospital of Arkansas.[37]

**IV. The Commissioner's Final Decision**

Plaintiff had the burden of proving his disability by establishing a physical or mental impairment lasting at least one year that prevents him from engaging in any substantial gainful activity.[38]  The ALJ undertook the familiar five-step analysis in determining whether Plaintiff was disabled.[39]  The ALJ found that Plaintiff has not engaged in substantial gainful activity since the

---

[34]Tr. 776.

[35]Tr. 777.

[36]Tr. 785-786.

[37]Tr. 1131.

[38]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

[39]The five-step sequential evaluation is as follows:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because  the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520.  See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

alleged onset of disability.[40]  He found that Plaintiff had the following severe impairments: some degeneration of the cervical and lumbosacral spine; hypertension; coronary artery disease; left eye blindness; and pain in his neck, chest, and lower back, but none severe enough to meet or be medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulations No. 4.[41]

The ALJ evaluated Plaintiff's subjective allegations and complaints pursuant to the criteria set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).[42]  He found Plaintiff's subjective allegations not to be fully credible.[43]  The ALJ found that Plaintiff could not perform his PRW, but has the RFC for a narrowed range of sedentary work.[44]  Relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of other work that exists in significant numbers in the national economy such as an order clerk, a telephone quotation clerk, and a callout operator.[45]  Therefore, the ALJ found that Plaintiff is not disabled.[46]

## V. Standard of Review

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

---

[40]Tr. 15.

[41]Tr. 20.

[42]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

[43]Tr. 17-18, 20.

[44]Tr. 18, 20.

[45]Tr. 19.

[46]Tr. 21.

>Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.[47]

## VI. Plaintiff's Arguments[48]

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider the combined impacts of his cardiovascular and musculoskeletal disorders and the blindness in his left eye which can affect his residual occupational base. He asserts that the degenerative disc disease of the cervical and lumbar spines and significant cardiovascular dysfunction, chest pain, shortness of breath, and lack of stamina are clearly severe impairments. Plaintiff complains that the ALJ should have done more to develop the cardiovascular functioning.

He argues that the ALJ's finding that Plaintiff was limited to a RFC of sedentary -- the full range of which was reduced by pain -- should have resulted in a finding of disability, especially since he has a limited education and no transferable work skills. Plaintiff also contends that the hypothetical posed to the VE did not encompass all of Plaintiff's limitations which should have included fatigue, chest pain with radiculopathy, malaise, and weakness. He further complains that the ALJ's credibility findings are insufficient since the ALJ's conclusion that Plaintiff exaggerated his functional loss by limping is not supported by the record. He also asserts that the medical records reveal that Plaintiff had sharp and significant pain rather than mild pain causing muscle spasm; the ALJ did not discuss aggravating and precipitating factors such as stress and temperature;

---

[47] Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

[48] As noted by the Commissioner, Plaintiff's brief focuses on the testimony of the first hearing rather than the testimony at the second hearing after remand.

and did not discuss, at any length, past work history or side effects of medications which caused headaches and upset his stomach.

**VII. Discussion**

I find that the ALJ made a proper credibility analysis.[49] An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole.[50] The ALJ reviewed the medical findings and explained the importance of credibility because a large component in this case was Plaintiff's subjective interpretation of his musculoskeletal problems and pain. Further, the ALJ specifically discussed Dr. Chakales's orthopedic examination, including the range of motion and work tolerance forms. He noted that Dr. Chakales did not find that Plaintiff had significant problems with his left knee and opined that Plaintiff could do a maximum of light exertional effort even with his cardiac complaints and hypertension. Although Plaintiff alleged that he walked with a limp due to left knee problems, the ALJ found that Plaintiff had exaggerated his limitations. The ALJ stated that Plaintiff took nitroglycerin and non-prescribed Tylenol P.M. for his pain. He further noted that Plaintiff had originally stated that he had stopped working, but his earnings record show that he continued working to a certain extent.

The ALJ found that Quick's testimony added nothing new to the case. "It is for the ALJ as trier of fact to give the testimony of family members and friends such credence as he deems warranted."[51]

---

[49]See, Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (ALJ not required to discuss each Polaski factor as long as analytical framework is recognized and considered).

[50]Barry v. Shalala, 885 F. Supp. 1224, 1225 (N.D. Iowa 1995).

[51]Kisling v. Chater, 105 F.3d 1255, 1258 (8th Cir. 1991).

The ALJ considered the combined impacts of Plaintiff's cardiovascular and musculoskeletal disorders and found them to be severe. The ALJ also pointed out that there was no evidence in the record that Plaintiff's vision was deteriorating and he had always worked with left eye blindness.

The hypothetical question submitted to the VE was consistent with the limitations that the ALJ had found to be credible -- a male who could handle weights at the sedentary level; sit at least two hours out of an eight-hour day; stand or walk at least six hours out of an eight-hour day; occasionally climb, balance, stoop, crouch, kneel or crawl; who should avoid moderate exposure to heights, moving machinery, humidity, dust, temperature and vibrations; and is not sighted in his left eye. A properly phrased hypothetical question, as posed by the ALJ here, constitutes substantial evidence.[52]

## VIII. Conclusion

After careful consideration of the record as a whole, the ALJ's decision was supported by substantial evidence and is AFFIRMED.

IT IS SO ORDERED this 27th day of September, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[52] Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).